IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

JUNIOR M. ARMSTRONG, )
)
) CIVIL ACTION NO. 9:07-3208-CMC-BM
Plaintiff, )
)
v. ) **REPORT AND RECOMMENDATION**
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL )
SECURITY, )
)
Defendant. )
_____ )

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on October 25, 2004, alleging disability as of October 17, 2004 due to diabetes, heart problems, disorientation, disequilibrium, and vision difficulties. (R.pp. 38-42, 75, 94-95, 98-99). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on July 11, 2006. (R.pp. 464-485). The ALJ thereafter denied Plaintiff's claim in a decision issued October 27, 2006. (R.pp. 10-19). The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-8).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be

reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was fifty seven (57) years old when he alleges he became disabiled, has a high school education with past relevant work experience as

2

a meat cutter, clerk, maintenance technician, security guard and tool room attendant. (R.pp. 19, 26-27, 38, 57, 61, 63-73, 75-76, 107-114, 467, 469). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff suffers from the severe impairments of congestive heart failure and diabetes, he nevertheless retained the residual functional capacity to perform his past relevant work as a gate guard, and is therefore not disabled. (R.pp. 15, 18). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to give a "specific and detailed rationale" for his RFC finding, by improperly evaluating Plaintiff's subjective testimony, by failing to properly discuss and evaluate Plaintiff's mental health as well as the side effects of medications, by failing to discuss the effects of Plaintiff's "intermittent incapacity" on his ability to perform substantial gainful activity, and by failing to properly consider and evaluate the opinion of Plaintiff's treating physician, Dr. Robert Pugh.

After careful review and evaluation of the ALJ's decision and the record in this case, the undersigned is constrained to agree with the Plaintiff that the ALJ committed reversible error in reaching his decision in this case. After consideration of the evidence, the ALJ determined that Plaintiff retained the exertional residual functional capacity for light work[1] with an ability to sit a total

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

3

of six out of eight hours, stand/walk a total of six out of eight hours, and that Plaintiff's depression resulted in no limitations in his activities of daily living, maintaining social functioning, or maintaining concentration, persistence in pace. (R.pp. 16, 18). However, Plaintiff's treating physician, Dr. Pugh, opined on two occasions that Plaintiff did not possess the RFC found by the ALJ. Dr. Pugh opined on May 16, 2005 that Plaintiff could only lift up to ten pounds occasionally, never use his hands/arms for handling, pushing, pulling, or manipulating, never operate foot/leg controls, never climb, bend, swat, kneel, crawl or twist, only occasionally use his hands above shoulder level, never be exposed to hazards or extreme temperatures, that he could only sit one hour at a time and one hour total in an eight hour work day, that his condition caused pain which was likely to affect his concentration, and that he required frequent rest and breaks and experienced side effects from his medications. (R.pp. 445-447). In a second opinion issued June 30, 2006, Dr. Pugh stated that Plaintiff had diabetes and neuropathy as well as "other medical conditions which rendered him unable to work now or in the future." (R.p. 439).

Treating physicians' opinions as to the nature and severity of a claimed impairment are entitled to controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the record. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [noting importance to be accorded to treating physician's opinion]; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ["The opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence"]. Further, if a treating physician's opinion is to be rejected, the ALJ is required to provide a specific explanation for why that opinion is being rejected. Morales v. Apfel, 225 F.3d 310, 317-318 (3rd Cir. 2000) [ALJ must explicitly weigh the evidence and explain

4



his rejection of medical opinions]. However, in his decision the ALJ only referenced Dr. Pugh's opinion of June 30, 2006, and stated that he accorded it "little weight" as it was "not supported by any treatment records, including his own . . . ." The ALJ does not discuss what Dr. Pugh's medical records show, or how they contradict or otherwise fail to support the RFC assessment he arrived at as Plaintiff's treating physician, nor does he discuss Dr. Pugh's more detailed opinion of May 16, 2005. Bailey v. Barnhart, No. 01-3474, 2002 WL 1401225, at **4 (7th Cir. July 26, 2002) [case remanded where ALJ did not adequately explain her rationale for discounting the recommendations of plaintiff's treating physicians]; see also SSR 96-8p ["The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g. daily activities, observations)].

The ALJ also appears to place great weight on the opinions of two state agency medical consultants who, after reviewing Plaintiff's medical records, opined on January 13, 2005 and September 6, 2005, respectively, that Plaintiff had the residual functional capacity to perform light work. (R.pp. 18, 138-145, 179-185). While the ALJ was certainly entitled to consider these state agency medical opinions in reaching his decision; see Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986)[Opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; the ALJ cannot simply adopt the opinions of non-examining physicians while rejecting the opinion of a treating physician in a summary manner, as was done in this case. See SSR 96-2p; Morales, 225 F.3d at 317-318 [ALJ must explicitly weigh the evidence and explain his rejection of the medical opinions]; Coffman, 829 F.2d at 517 [Treating physician opinions entitled to great weight absent persuasive contradictory evidence].

Additionally, Plaintiff correctly notes in his brief that the two state agency opinions

were issued in 2005, while the medical evidence reflects that there was a general worsening of Plaintiff's condition after the issuance of these opinions, none of which was adequately explained or addressed by the ALJ in his decision. See generally, R.pp. 187-189 (showing exacerbation of Plaintiff's diagnosed congestive heart failure as well as edema and effusions), 244-245, 255-259 (reflecting fluid retention and poor heart ejection fraction), 233-234 (including echocardiogram showing ejection fraction of only thirty to thirty five percent), 205-211, 223-224 (medical records reflecting ejection fraction of only thirty seven percent), 276-277 (reflecting diagnosis of uncontrolled diabetes mellitus with history of coronary artery disease and hypertension). It should also be noted that, although the ALJ stated in his opinion that no physician had recommended to Plaintiff that he elevate his legs throughout the day, the medical records from the VA Medical Center dated January 30, 2006 show that, among other interventions, Plaintiff was to "[e]levate his [] lower extremities to increase arterial blood supply and improve tissue perfusion."] (R.pp. 17, 245). While these records do not necessarily require a finding of disability, certainly some discussion of the general deterioration of Plaintiff's condition over the course of 2005-2006 should have been provided, particularly in light of the great weight apparently accorded the state agency physician opinions which were obtained prior to that time.

As for Plaintiff's depression, the medical record with respect to Plaintiff's mental impairment shows that he was on medication for depression, had once threatened suicide, and on May 20, 2005 had been assigned a GAF of 51[2] by Nurse Practitioner Kathleen Desorcy. (R.pp. 325,

---

[2]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF of 51 to 60 indicates that moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).



6

327-329, 420-425). Further, a state agency psychologist reviewed Plaintiff's medical records on July 12, 2005 and opined that Plaintiff's affective disorder would result in mild limitations in his activities of daily living, social functioning, and concentration, persistence and pace. (R.pp. 146-159). However, in his opinion the ALJ found that, "[b]ased on the medical evidence," Plaintiff's depression resulted in "no" limitation in his activities of daily living, maintaining social functioning, or maintaining concentration, persistence and pace. (R.p. 16). In making this finding, the ALJ does not even refer to the medical opinions and findings of Nurse Desorcy or the state agency psychologist, Dr. Craig Horn. In light of the fact that, in making his findings, the ALJ specifically rejected the opinions of these two medical professionals, some reference to this evidence should have been made and an appropriate discussion and analysis for why these opinions were being discounted should have been provided. Cf. Cotter v. Harris, 642 F.2d 700 (3rd Cir. 1981) [listing cases remanded because of ALJ's failure to provide explanation or reason for rejecting or not addressing relevant probative evidence]; Dewey v. Barnhart, No. 05-3329, 2006 WL 1109767 (10th Cir. April 27, 2006) [case remanded where the record lacked medical evidence to support the ALJ's RFC finding]; Morales, 225 F.3d at 317-318 [ALJ must explicitly weigh the evidence and explain his rejection of medical opinions]; Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 654-655 (8th Cir. 2004) [noting that ALJ's improper consideration of evidence in evaluating impairment in social functioning warranted remand].

Finally, although a remand is being recommended, the undersigned does not find that a remand for an award of benefits is warranted at this time. Before a definitive decision can made on Plaintiff's claim, an *appropriate* review and analysis must be made of the evidence and of Plaintiff's claims by the ALJ before the Court can reach a decision on whether substantial evidence

supports the decision rendered. *Cf.* Vertigan v. Halter, 260 F.3d 1044, 1054 (9th Cir. 2001)[Remand for an award of benefits is only appropriate "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed"] (Quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)); Sorenson v. Bowen, 888 F.2d 706, 713 (10th Cir. 1989)["Outright reversal and remand for immediate award of benefits is [only] appropriate when additional fact finding would serve no useful purpose"]. As for the remainder of Plaintiff's complaints concerning the decision, on remand the ALJ will be able to reconsider and re-evaluate Plaintiff's credibility and the evidence as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002) [on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

### Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for the purpose of a proper evaluation, discussion and findings with respect to the evidence and Plaintiff's residual functional capacity, and for such further administrative action as is deemed necessary and appropriate. See Shalala v. Schaefer, 113 S.Ct. 2625 (1993).

Bristow Marchant
United States Magistrate Judge

November 25, 2008
Charleston, South Carolina